UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER HENRY,
No. 503802,                                    CASE NO. 4:07-CV-15424

        Petitioner,                            HONORABLE STEPHEN J. MURPHY, III

v.

GINA DAVE, SUPERVISOR,
LINCOLN PARK PAROLE OFFICE,

        Respondent.
_____/


**OPINION AND ORDER DENYING THE
PETITION FOR WRIT OF HABEAS CORPUS**

        This matter is pending before the Court on petitioner Christopher Henry's petition

for writ of habeas corpus pursuant to 28 U.S.C. §2254.[1] Henry was charged in the Oakland

Circuit Court with two-counts of first-degree criminal sexual conduct and five-counts of

second-degree criminal sexual conduct arising from his alleged sexual abuse of four of his

minor children. Following a jury trial, Henry was convicted of one count of second-degree

criminal sexual conduct under Mich. Comp. Laws §750.520c(1)(b)(1) and acquitted of the

other charges. Henry filed this *pro se* petition challenging the one-to-fifteen year sentence

imposed pursuant to his conviction for second-degree criminal sexual conduct. For the

_____

        [1]      Henry filed his petition for writ of habeas corpus while he was incarcerated
at the Hiawatha Correctional Facility. He has since been placed on parole and is being
supervised by the Lincoln Park Parole Office.  The proper respondent in a habeas case is
the petitioner's custodian. The custodian in this case is Gina Dave, the supervisor of the
office administering Henry's term of parole. Rule 2(a), 28 foll. U.S.C. § 2254. Therefore, the
Court substitutes Gina Dave in the caption.

1

reasons stated below, the Court will deny the petition.

## BACKGROUND

Allegations against Henry first surfaced in November 2002, when Henry's oldest daughter, S.H.,[2] reported that Henry had been abusing her.[3] At the time that the allegations surfaced, Henry had already moved out of the family home. On November 13, 2002, two days after S.H. reported the abuse, Henry's wife, Marilyn Wulf, filed for divorce. Wulf testified at trial that she had never observed any sexual abuse, and that prior to Henry leaving the house, none of her children had reported any abuse.

On November 11, 2002, Tawnne Barrera, a children's protective services investigator for the Family Independence Agency ("FIA"), received a referral to investigate the Henry family. On November 14, 2002, she conducted an in-home visit with Henry's four oldest daughters, S.H., A.H., K.H., and B.H. During the visit, Barerra interviewed Henry's daughters together around the kitchen table. Subsequently, on November 26, 2002, Amy Allen of Care House conducted individual forensic interviews with the children. A multi-disciplinary team, in which one person conducts the interview and another observes it, was used during Allen's interview.

Henry was charged in the Oakland Circuit Court with two-counts of first-degree criminal sexual conduct and five counts of second-degree criminal sexual conduct.

---

[2]     Henry's pleadings refer to the victims by their first names. Fed. R. Civ. P. 5.2(a)(3), however, prohibits the use of a minor's name and requires that only a minor's initials be used.

[3]     The exact circumstances of S.H.'s disclosure are unclear. According to the trial record, S.H. stated that she had first told both her friend and the child services investigator about the abuse. Henry's wife, Marilyn Wulf, testified that S.H. first told her of the abuse in November 2002.

Subsequently, a jury trial was conducted. During the trial, Henry was represented by two retained attorneys, Frederick Toca and Sabrina Johnson. On May 4, 2004, following arguments, instructions, and deliberations, Henry was convicted of one-count of second-degree criminal sexual conduct towards S.H. and acquitted of the other charges. Henry was subsequently sentenced to one-to-fifteen years imprisonment.

At trial, S.H., A.H., K.H., and B.H., testified that Henry had sexually assaulted them on multiple occasions. S.H. testified that Henry sexually abused her from the time that she was eight-years-old until he moved out of the house when she was thirteen. S.H testified, however, that she did not tell anyone about the abuse until after Henry had moved out of the house. S.H. further alleged that just one week prior to Henry moving out, he hugged her and reached his hand down her pants and stroked her vagina. S.H. stated that, on another occasion, Henry made her remove her bra, and he rubbed her breasts. S.H. also testified that when she was ten years old, Henry laid on top of her in her bed and rubbed her breasts and vagina. She explained that she did not tell her mother about the incident because she was afraid that Henry would hit her.

K.H., who was eight-years-old when Henry left the family home, testified that she was six-years-old when Henry began abusing her. She testified that while she was watching television with Henry, her mother, and her sisters, Henry put his hands down her pants, and rub his hands over and inside her vagina. K.H. also stated that Henry touched her chest while she prepared to go to bed. K.H. never told her mother or the police about the abuse and first disclosed it during the Care House interview.

A.H., who was twelve-years-old at the time of trial, testified that Henry touched her several times on the chest and on her vagina when he picked her up and threw her into

bed.  A.H. also stated that on one occasion Henry touched her breast after she was stung

by a bee.  A.H. further described how Henry placed his foot down her pants while they sat

on the couch. B.H., who was eight at the time of trial, likewise testified that Henry touched

her in the "wrong spot" with his foot when they were on the couch.

Henry testified in his own defense and denied the allegations made by his

daughters. He further explained that he had previously had arguments with his wife and

that he had threatened to take custody of the children. Henry's two sisters, brother, and

brother-in-law all testified as character witnesses for Henry.

Henry's petition focuses on the testimony of the Care House interviewer, Amy Allen.

Allen testified for the prosecution as an expert witness on forensic interviewing and on the

characteristics of children who have been sexually abused. During her testimony, Allen

explained that most child victims of sexual assault delay disclosure of the abuse.[4]  Allen

further stated that there are various explanations for this delay.  Allen testified that the goal

of a forensic interview, however, is not to get a disclosure. Rather, "the goal is to give [the]

child an opportunity in a truth seeking manner to see if the child will make a disclosure

about whether or not anything happened to them."

On cross-examination, defense counsel elicited from Allen that she had never tried

to ascertain whether S.H.'s behavior was consistent with that of a typical sexually abused

child. Allen also conceded that she had been unaware that the children had been

interviewed prior to the Care House interview, and that she did not know about the FIA

interview. Allen testified, however, that it is common for an FIA worker to talk to children

---

[4]        Allen stated that "it's most common that children [who are victims of
sexual assault] will delay their disclosure at some level."

before a referral to Care House.

With respect to the FIA interview, Allen conceded that it is important for interviews to occur at a neutral place, and therefore, interviewing children in their home is not preferred. Allen further agreed that interviewing the Henry children while they were all in the same room, discussing similar events, was not the "most preferred" method of conducting an interview because it raises concerns about suggestibility and coaching between siblings. Allen also conceded that parents and interviewers, who are not trained in forensic interview techniques, may suggest things to a child during an interview. Allen resisted the notion, however, that the children were tainted by the FIA interview, opining that tainting is more common with preschool-aged children. On redirect, Allen reaffirmed that "the research shows that preschool children are at the age when taint is most susceptible, just based on their development and. . .you can suggest information to a preschooler, much more than you can - even from kindergarten on, just that age of development is very tender in terms of suggestibility." Trial Tr. April 29, at 127.

Allen also addressed suggestibility in the case of divorce. Allen agreed that false allegations occur in cases of divorce, but she described such false allegations as comprising "a very small percentage" of cases. Allen went on to explain that "in a number of cases" false allegations stem from the parent and not the child. She conceded, however, that "there are times when children say something happened that there isn't evidence to prove that did happen or you do find, at the end of your investigation, that it was a false report. That can happen." Trial Tr. April 29, at 114. On redirect, Allen testified that there are questions used in forensic interviewing to deal with the possibility of false allegations in a custody dispute, but she conceded that "children can say things that happen to them

5

that don't turn out to be sexual abuse, or eventually they recant and say they made it up and it didn't happen." Trial Tr. April 29, at 131.

Henry's trial counsel did not call an expert witness to rebut Allen's testimony. Following his conviction, Henry was appointed appellate counsel, who filed a motion alleging ineffective assistance of counsel based on counsel's failure to call an expert witness to rebut Allen's testimony, and moving for new trial and an evidentiary hearing. Henry also filed a motion for re-sentencing arguing that the sentencing court improperly made findings of fact that prevented him from receiving a so-called "intermediate sanction" sentence that would have carried a maximum one-year jail term instead of a maximum fifteen-year prison term.

Henry supported his motion for a new trial and an evidentiary hearing with an affidavit from Dr. Melvin Guyer. Dr. Guyer stated that suggestibility is a problem for children of all ages, not just preschool aged children, as suggested by Allen. He also stated that suggestible questioning and forensic interviewing bias can create a substantial risk for eliciting a false statement from a child. Dr. Guyer further asserted that there was no scientific basis for Allen's statement that false allegations are largely made by parents, rather than by children, and he stated that studies, in fact, contradict Allen's opinion that false allegations of abuse in the context of divorce cases can largely be ascribed to parents. He also claimed that Allen relied on Child Sexual Abuse Accommodation Syndrome to explain the delayed reporting phenomenon among victim's of sexual assault and to help diagnose whether abuse actually occurred in Henry's case, but that such an approach has largely been discredited as a diagnostic tool.

Henry argued that the presentation of expert testimony, such as Dr. Guyer's, would

have substantially undermined Allen's damaging assertions. Henry asserted that an evidentiary hearing was required because, based on the existing record, it could not be determined whether trial counsel's failure to call an expert witness was a matter of strategy or deficient performance. Henry did not offer an affidavit from either of his trial attorneys, however, nor did he proffer any other evidence demonstrating the reason that trial counsel did not call an expert witness at trial despite the fact that one of Henry's trial attorneys was present in the courtroom during the hearing conducted on the motion for a new trial. The trial court denied the motion for a new trial, the motion for an evidentiary hearing, and the motion for re-sentencing.

Henry subsequently filed an appeal in the Michigan Court of Appeals. His appellate brief raised five claims, including the two claims that he presents in the instant petition. Henry also filed a motion for remand in the Court of Appeals asserting that the trial court erred in denying his motion for an evidentiary hearing. Henry supported the motion with Dr. Guyer's affidavit, but he did not attach an affidavit from trial counsel or make any other offer of proof with respect to trial counsel.

The prosecutor filed an answer to the motion for remand and argued that Henry's request for a hearing was not sufficiently supported, stating:

> The People would note that defendant's trial counsel was in attendance at the motion for new trial on June 8, 2005 and sitting with appellate counsel. Appellate counsel sought the trial court's permission for trial counsel to argue portions of the motion for new trial [presumably those portions not pertaining to allegations of ineffective assistance of counsel]. Despite the availability and cooperation of trial counsel, appellate counsel failed to file an affidavit from trial counsel in support of his motion for new trial.

Answer to Motion for Remand, ¶ 8, n 2.

The Michigan Court of Appeals affirmed Henry's conviction and sentence in an

unpublished opinion. *People v. Henry*, No. 258573, slip op. (Mich. Ct. App. April 25, 2006). With respect to Henry's ineffective-assistance-of-counsel claim, the court found it was limited to the facts already established in the record, and that the failure to provide an affidavit from trial counsel was fatal to Henry's request for an evidentiary hearing. The court stated:

> Next, defendant argues that defense counsel's failure to present an expert witness to counter Allen's testimony constituted ineffective assistance of counsel. Because the trial court failed to hold a *Ginther* hearing on this issue, our review is limited to mistakes apparent from the record. *People v. Wilson*, 242 Mich. App. 350, 352 (2000). A claim of ineffective assistance of counsel is generally a mixed question of fact and constitutional law. *People v. Grant*, 470 Mich. 477, 484 (2004). To establish ineffective assistance of counsel, a defendant must establish both deficient performance and prejudice. *Id.* at 485-86. A defendant claiming ineffective assistance of counsel must overcome a presumption that the challenged action could have been sound strategy. *Id.* at 485. 'A sound strategy is one that is developed in concert with an investigation that is adequately supported by reasonable professional judgment.' *Id.* at 486. Defense counsel's words and actions before trial and at trial are the most accurate evidence of the defense strategy and theories. *Id.* at 487. The failure to call a witness constitutes ineffective assistance of counsel only if it deprives a defendant of a substantial defense. *People v. Dixon*, 263 Mich.App. 393, 398 (2004).
>
> In the case at bar, the record indicates that on cross-examination defense counsel elicited from Allen that children may lie about sexual abuse in divorce situations. This was consistent with the defense theory. Defense counsel's decision not to produce a defense expert to testify in this and other areas Allen addressed was a matter of trial strategy. Defense counsel's testimony would have been essential for defendant to overcome the presumption that defense counsel's failure to call an expert witness was unsound strategy. *People v. Rockey*, 237 Mich. App. 74, 76-77 (1999). Because defendant failed to make an offer of proof regarding defense counsel's proposed testimony or strategy, the trial court properly denied defendant's request for a *Ginther* hearing. Defendant did not establish any area where factual development would advance his position that defense counsel's performance fell below an objective standard of reasonableness. Defendant's motion to remand filed in this Court had this same deficiency. Limiting our review to the record, the trial court properly rejected defendant's claim of ineffective assistance of counsel.

*Henry*, slip op. at 2-3. The Court of Appeals also rejected Henry's sentencing claim and found that it was bound by *People v. Drohan*, 264 Mich. App. 77, 89 fn. 4 (2004), to reject his challenge under *Blakley v. Washington*, 542 U.S. 296 (2004). *Henry*, slip op. at 4.

Henry then filed an application for leave to appeal with the Michigan Supreme Court. The application raised the same five issues that were raised in the Michigan Court of Appeals. Notably, Henry's application did not address the finding by the Michigan Court of Appeals that his request for a hearing was deficient because it lacked an offer of proof with respect to counsel's decision not to call an expert for the defense. The application for leave to appeal was denied. *People v. Henry*, No. 131476, slip op. (Mich. Sup. Ct., September 26, 2006).

Subsequently, Henry filed this application for writ of habeas corpus raising the following claims:

> I. The state court unreasonably applied federal law and made a decision based upon an unreasonable determination of the facts in finding that Henry was not denied his constitutional right to effective assistance of counsel, where counsel failed to call an expert witness for trial.

> II. The state court unreasonably applied federal law and violated Henry's constitutional right to trial by jury and due process by authorizing improper judicial fact-finding to increase his maximum sentence from an intermediate sanction with twelve-months in jail to a prison sentence of fifteen-years.

## STANDARD OF REVIEW

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Henry is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits, resulted

in either:

> (1) a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d). Stated another way, Henry must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts." *Price v. Vincent*, 538 U.S. 634, 639 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

## ANALYSIS

Henry bases his ineffective assistance of counsel claim on his counsel's failure to present an expert witness to counter Allen's testimony. He further claims that the state court's finding that counsel's performance was "a matter of trial strategy" was based on an unreasonable application of clearly established federal law and on an unreasonable

determination of facts. Henry also asserts that he is entitled to an evidentiary hearing on his claim because his repeated requests for a hearing in the state courts were denied despite the fact that he supported the claim with Dr. Guyer's affidavit.

1. Henry is Not Entitled to an Evidentiary Hearing

The Court must first determine whether Henry is entitled to an evidentiary hearing. 28 U.S.C. §2254(e) provides that, where a petitioner has "failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the application shows that":

> (A) the claim relies on –
>
> > (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

*Id.* The Supreme Court has held that "under the opening clause of §2254(e), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000). "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.* at 437. If a defendant's fails to support his request with affidavits or other evidentiary proffers, as required by state law, he has not met the "diligence" requirement of §2254(e)(2), and will not be entitled to an evidentiary hearing. *See Cooey v. Coyle*, 289 F.

3d 882, 893 (6th Cir. 2002) ("By failing to submit evidence [to the state court], Cooey barred himself from developing the claim further, and is not now entitled to an evidentiary hearing.").

Under Michigan law, a request for an evidentiary hearing must be supported by an adequate offer of proof. Mich. Ct. R. §7.211(C)(1). Further, Mich. Ct. R. §7.211(C)(1)(a)(ii) provides that a motion to remand must be supported by an affidavit or offer of proof regarding the facts to be established at a hearing. In this case, the Michigan Court of Appeals found that Henry did not comply with th requirements of §7.211(C), holding that "because defendant failed to make an offer of proof regarding defense counsel's proposed testimony or strategy, the trial court properly denied defendant's request for a *Ginther* hearing." *Henry*, slip op. at 3.

The Court is unaware of Michigan precedent specifically requiring an affidavit from a defendant's trial counsel in order to obtain a hearing on an ineffective-assistance-of-counsel claim. Whether the Michigan courts erred in their application of Mich. Ct. R. §7.211 in denying Henry's motion for an evidentiary hearing is a question of state law, however, that cannot be reviewed in a federal habeas petition. *Hayes v. Prelesnik*, 193 Fed. Appx. 577, 584 (6th Cir. 2006) (finding that "to the extent that [petitioner] argues that the Michigan courts violated their own rules of procedure, his argument is without merit. Whether or not the Michigan courts complied with the procedural requirements of Michigan law is not a matter for this court to decide on a petition for habeas corpus relief."). Accordingly, the Court is bound by the state court's finding that Henry failed to comply with the court's procedural requirements. Because Henry failed to comply with Rule.7211(C), he failed to exercise the due diligence necessary for him to be able to secure an evidentiary hearing

in this court under 28 U.S.C. §2254(e)(2). See *Moore v. Berghuis*, No. 00-CV-73414, 2001 WL 277047, at *7 (E.D. Mich. Feb. 28, 2001).

Additionally, a review of the record shows that Henry did not meet the diligence requirement of §2254(e)(2). The fact that Henry's trial counsel appeared with his appellate counsel at the post-conviction motion hearing suggests that with the exercise of reasonable diligence, Henry could have obtained an affidavit from trial counsel. The fact that he did not do so demonstrates that Henry was not diligent within the meaning of §2254(e)(2). *See Baja v. Ducharme*, 187 F.3d 1075, 1079 (9th Cir. 1999) (holding that although Baja had the opportunity in state proceedings to come forward with evidence to support his allegation that counsel was ineffective at trial, he failed to do so, and therefore failed to develop the factual basis of his claim in state court proceedings within the meaning of 28 U.S.C. § 2254(e)). While Henry made conclusory allegations that his trial counsel failed to call an expert witness either because of lack of time or deficient performance, Henry chose not to support his allegations with an evidentiary proffer even though trial counsel was present and available when appellate counsel first requested the hearing. Thus, Henry simply made no offer of proof that counsel deficiently failed to call an expert witness to rebut Allen's testimony.

Moreover, the record shows that Henry's trial counsel did consider calling an expert witness. At the April 16, 2004 motion hearing, counsel stated that she had contacted an expert witness, Dr. Garfield Johnson.[5] Hearing Tr. at 5. While it appears that Dr. Johnson

---

[5]     Counsel explained that: "I spoke to Dr. Garfield Johnson at length yesterday. He's an expert that we've used at length before, and he said, if I could do it, I could. He said this is a situation where definitely I need to look at the medicals and see, you know, whether or not I can help you." Hearing Tr. at 8.

was consulted regarding physical evidence of penetration, evidence that counsel spoke with Dr. Johnson undermines the argument that trial counsel deficiently failed to consider the use of expert witnesses. Further, if trial counsel did fail to consider calling an expert witness, Henry should have obtained an affidavit or statement from his trial counsel confirming that this was the case, especially in light of the fact that counsel was clearly available to provide such information.

This case stands in contrast to *Brown v. Smith*, 551 F.3d 424, 430 (6th Cir. 2008). In *Brown*, the habeas petitioner claimed that his trial counsel's failure to investigate and obtain records, related to his victim's counseling sessions, denied him effective assistance of counsel. *Id.* at 426. Petitioner filed two motions for an evidentiary hearing with the Michigan Court of Appeals in an attempt to develop evidence of how the records would have benefitted the defense; both motions were denied. *Id.* 430. Unlike in the present case, however, the petitioner in *Brown* was unable to obtain evidence because the victim's therapist refused to disclose her counseling records to the petitioner or his counsel in the absence of a court order. *Id.* Thus, the evidence that supported the petitioner's ineffective-assistance-of-counsel claim was not available to him at the time he attempted to develop the record in the Michigan courts. The Sixth Circuit found that the district court erred in refusing to expand the record because the petitioner did all he could do to develop the record in the state courts, but his efforts were hampered by an unwilling witness. *Id.*

In Henry's case, trial counsel's presence at the hearing on the motion for a new trial suggests that with due diligence an affidavit could have been obtained to support petitioner's motion. Further, Henry never alleged that efforts were made to obtain an affidavit from his trial counsel, even after the Michigan Court of Appeals explicitly found that

Henry's claim was deficient because he failed to support it with an affidavit. In fact, Henry's application in the Michigan Supreme Court for leave to appeal does not address the Michigan Court of Appeals' finding at all. Accordingly, the Court finds that Henry has not exercised due diligence as required by §2254(e)(2), and he is therefore barred from obtaining an evidentiary hearing in this Court.

2. Henry was Not Denied Effective-Assistance-of-Counsel

A claim for ineffective assistance of counsel requires that the defendant show: 1) that counsel's performance was deficient and 2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). When evaluating an ineffective assistance of counsel claim, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal citations and quotation marks omitted).

It is well-established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The duty to investigate derives from counsel's basic function "'to make the adversarial testing process work in the particular case.'" *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (quoting *Strickland*, 466 U.S. at 690). "In any ineffectiveness case, a particular decision to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691; *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000) (finding that "The relevant question is not whether counsel's choices were

strategic, but whether they were reasonable."); *Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004). A purportedly strategic decision is not objectively reasonable "when the attorney has failed to investigate his options and make a reasonable choice between them." *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991) (cited in *Combs v. Coyle*, 205 F.3d 269, 288 (6th Cir. 2000)).

Henry claims that his trial counsel's failure to call an expert witness to counter Allen's testimony was the result of deficient performance. The state argues that Henry and Dr. Guyer exaggerate the scope of Allen's testimony and that Henry's trial attorneys were able to effectively challenge her testimony on cross-examination.

Henry's allegation is not supported by the existing record, and he does not present sufficient evidence to overcome the strong presumption that his counsel's actions were reasonable. The record shows, at a minimum, that Henry's trial counsel was aware of the potential to call expert witnesses, and that they in fact consulted with one expert witness. Furthermore, one of Henry's trial attorneys, Johnson, was a former prosecutor and had tried similar cases in the past. Hearing Tr. April 16, at 4, 12. The trial prosecutor in Henry's case, in fact, considered Johnson "an expert in this area." *Id.* at 12. Johnson's detailed cross-examination of Allen demonstrated her knowledge of the particular issues related to child sexual abuse investigations and the problems associated with suggestibility and delayed disclosure. In light of her obvious knowledge, it is highly presumptuous to assume that Johnson did not consider the possibility of calling an expert witness, and there is nothing in the record that overcomes the presumption that counsel's assistance was reasonable.

Further, Henry does not present evidence to overcome the presumption that counsel

16

made a legitimate strategic decision. Henry's counsel may have decided that they could most effectively establish the possibility of a child making false allegations of sexual abuse through cross-examination of Allen, rather than through calling their own witness. Counsel may have decided to avoid creating a "battle of expert witnesses" and instead focus the jury's attention on perceived credibility problems of the victims themselves. *See Nields v. Bradshaw*, 482 F.3d 442, 456 (6th Cir. 2007) (counsel's decision to limit questioning of expert witness may have been a strategic one); *Bower v. Quarterman*, 497 F.3d 459, 467 (5th Cir. 2007) ("An early formulation of trial strategy and a decision to attack the state's expert witnesses on cross examination rather than calling additional experts can be a part of a reasonable trial strategy."); *Sallahdin v. Mullin*, 380 F.3d 1242, 1250-51 (10th Cir. 2004) (upholding as constitutional counsel's decision not to call an expert witness, despite counsel's failure to identify a strategic basis for that decision, when "the record on appeal supplies at least three reasons why it would have been constitutionally reasonable for counsel not to introduce this evidence").

Henry has also failed to demonstrate prejudice. To establish prejudice from counsel's failure to investigate a potential witness, a petitioner must show that the witness would have testified and that the witness's testimony would probably have changed the outcome of the trial. *Hadley v. Groose*, 97 F.3d 1131, 1135 (8th Cir. 1996). Further, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. Henry has failed to show the existence of a reasonable probability that the result of his trial would have been different had an expert, like Dr. Guyer, been called by the defense. In fact, cross-examination of Allen covered substantially the same grounds

17

as Dr. Guyer's affidavit.

Dr. Guyer's affidavit and Allen's testimony both covered the issue of suggestibility. Dr. Guyer's affidavit states that suggestible questioning and forensic interviewer bias create the risk of eliciting a false statement from a child. While testifying about forensic interview techniques, Allen admitted that the circumstances of the FIA interview were problematic because they created a risk of suggestibility. The strongest difference of opinion between Dr. Guyer's affidavit and Allen's testimony is Dr. Guyer's assertion that suggestibility is a problem for children of all ages and not just preschool aged children, as Allen's testimony had indicated. Cross-examination of Allen by defense counsel, however, elicited significant information about suggestibility. Allen admitted during cross-examination that the circumstances of the FIA interview may have given rise to suggestibility, and that interviewing all the children in the same room together was not "the preferred method," because it raised the concern of coaching between siblings.

Further, Dr. Guyer also stated that there is no foundation for Allen's testimony that false allegations in divorce cases largely stem from parents, not children. Allen only testified, however, that "in a number of cases" false allegations stem from the parent. She did not testify that false allegations cannot originate with a child, and she conceded twice during her testimony that a child can make false allegations. Finally, Dr. Guyer claimed that Ms. Allen relied on Child Sexual Abuse Accommodation Syndrome to diagnose whether the children in this case were abused, but nowhere in her testimony did Allen testify that she believed the children were in fact abused. She only testified about the general characteristics of abused children and the forensic interview technique. In fact, Allen never referred to the Syndrome at all.

Allen was subject to cross-examination regarding her credibility, and cross-examination elicited substantially similar information from Allen as was provided by Dr. Guyer's affidavit. Further Allen made several concessions during cross-examination, including conceding that there may have been suggestibility during the FIA interview, and that false allegations by children are possible in divorce cases. Therefore, the Court finds that there is no reasonable probability that the result of Petitioner's trial would have been different had a defense expert witness been called. Consequently, the decision by the Michigan Court of Appeals, finding that Henry was not denied effective assistance of counsel, did not involve an unreasonable determination of facts or law and Henry's claim must be denied under 28 U.S.C. §2254(d).

## C. Henry's Sentence Does Not Violate His Constitutional Rights

Henry also claims that the trial court improperly based his sentence on facts that were not submitted to a jury, proven beyond a reasonable doubt, or conceded at the plea hearing in violation of his constitutional rights. In support of his claim, Henry relies on *Blakely v. Washington,* 542 U.S. 296 (2004), in which the U.S. Supreme Court held that any fact, other than the fact of a defendant's prior conviction, that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for an offense must be submitted to the jury and proven beyond a reasonable doubt. *Id.* at 301 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). Henry's reliance on *Blakely* is inapposite because *Blakely*, which involved a trial court's departure from Washington's determinate sentencing scheme, does not apply to Michigan's indeterminate sentencing scheme. *People v. Drohan,* 475 Mich. 140, 160-61 (2006).

Under Michigan's scheme, the defendant is given a sentence with a minimum and

19

a maximum sentence. The maximum sentence is not determined by the trial judge but is set by law. *Id*; *People v. Claypool,* 470 Mich. 715, 730, fn.14 (2004). The minimum sentence is based on the sentencing guidelines' ranges. *Drohan*, 475 Mich. 160. "The trial judge sets the minimum but can never exceed the maximum," other than in cases of habitual offenders. *Id*. Thus, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255, fn. 7 (2003).

Indeterminate sentencing schemes, unlike determinate sentencing schemes, do not infringe on the province of the jury. *See Blakely*, 542 U.S. at 304-05, 308-09; *Harris v. United States*, 536 U.S. 545, 565 (2002) ("Whether chosen by the judge or the legislature, the facts guiding judicial discretion below the statutory maximum need not be alleged in the indictment, submitted to the jury, or proved beyond a reasonable doubt"; the judge "may impose the minimum, the maximum, or any other sentence within the range without seeking further authorization from those [grand and petit] juries-and without contradicting *Apprendi*."). The holdings in *Apprendi* and *Blakely,* therefore, do not apply to judicial fact-finding that increases a minimum sentence so long as the sentence does not exceed the applicable statutory maximum. *See Chontos v. Berghuis,* 585 F. 3d 1000, 1002 (6th Cir. 2009). Indeed, "[b]y clarifying that minimum sentences fall outside *Apprendi's* scope, *Harris* forecloses" [Mr. Henry's] claim. *Id.* The Sixth Amendment jury trial right merely "ensure[s] that the defendant 'will never get more punishment than he bargained for when he did the crime'"; it does "not promise that he will receive 'anything less' than that." *Id.* at 1002 (*quoting Harris*, 536 U.S. at 566). When Henry violated the criminal sexual conduct statute, he "bargained" that if a jury found him guilty, he could face up to fifteen years in prison.

Therefore, "regardless of the ways that judicial fact-finding and Michigan's guidelines affected his minimum sentence," Henry "got no more than he bargained for." *Chontos,* 585 F. 3d 1002. His sentence, therefore, is not unconstitutional.

This conclusion is not altered by Henry's assertion that, but for fact-finding made by the sentencing court, he would have been entitled to an "intermediate sanction" of one-year in jail. Under Michigan's "intermediate sanction cells,"

> [w]hen the upper and lower limits of the recommended minimum sentence range meet certain criteria, a defendant is eligible for an intermediate sanction. If the upper limit of the sentence range exceeds 18 months and the lower limit is 12 months or less, the defendant's range is in a "straddle cell." When the range is in a straddle cell, the sentencing court may elect either to sentence the defendant to a prison term with the minimum portion of the indeterminate sentence within the guidelines range or to impose an intermediate sanction, absent a departure. If the upper limit of the minimum sentence range is 18 months or less . . . the cell containing the range is an "intermediate sanction cell." Under these circumstances, the statue provides that the court shall impose an intermediate sanction unless the court states on the record a substantial and compelling reason to sentence the individual to the jurisdiction of the department of corrections. An intermediate sanction may include a jail term that does not exceed the upper limit of the recommended minimum sentence range or 12 months, whichever is less.

*People v. Harper*, 479 Mich. 599, 617 (2007) (*quoting* Mich. Comp. Laws §769.34(4)(a)) (citations and footnotes omitted). An "intermediate sanction" includes "probation or any other sanction, other than imprisonment in a state prison or reformatory," such as substance abuse treatment, house arrest, or community service. Mich. Comp. Laws §769.31(b).

This law does not affect the maximum sentence required. The Supreme Court of Michigan has held that:

> Michigan's unique law requiring the imposition of an intermediate sanction upon fulfillment of the conditions of [§769.34(4)(a)] does not alter the maximum sentence that is required upon conviction and authorized by either

the jury verdict or the guilty plea. The conditional limit on incarceration contained in [769.34(4)(a)] is a matter of legislative leniency, giving a defendant the opportunity to be incarcerated for a period that is less than that authorized by the jury verdict or the guilty plea, a circumstance that does not implicate *Blakely.*

*Harper*, 479 Mich. at 603-04. Under this standard, when a defendant is convicted, he is subject to the maximum term of imprisonment authorized by the statute of conviction without any additional fact-finding. Additional fact-finding may entitle a defendant to a lesser sentence under §769.34(4)(a), but a defendant's entitlement to sentencing under an intermediate sanction cell arises only after the trial court has scored the sentencing guidelines. Without that scoring, the conviction authorizes the court to impose the maximum sentence allowed by law. *Harper*, 479 Mich. at 621-25.

Henry asserts that based only on the verdict, his sentencing guideline range would have been 0-to-17 months. Henry argues, as did the defendants in *Harper*, that "because the statute states that the sentencing court 'shall' impose an intermediate sanction, [he was] constitutionally entitled under *Blakely* to either a jail term of 12 months or less or one or more of the other intermediate sanction options available to the sentencing court." *Harper*, 479 Mich. at 618-19. The argument fails because the existence of the intermediate sanction cell provision does not alter the fact that the statutory maximum for Henry's crime was fifteen years, the sentence he received. Thus, the analysis under *Blakely* is no different with respect to intermediate sanction cell sentences than it is with respect to the Michigan sentencing guidelines as a whole, and *Blakely* is not implicated. Henry's sentence, therefore, does not violate his constitutional rights.

## CONCLUSION

22

The Court denies the petition for writ of habeas corpus. The Court, however, grants a certificate of appealability to Henry with respect to his ineffective-assistance-of-counsel claim. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. §2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court finds that Henry's ineffective-assistance-of-counsel claim is meritless. The Court notes, however, that the Michigan Court of Appeals decision to deny Henry an evidentiary hearing because he did not provide an affidavit from trial counsel appears to be a novel one. Michigan law certainly requires an adequate offer of proof to accompany a request for a hearing, but the Court is unaware of case-law that specifically requires an affidavit from trial counsel to support a request for an evidentiary hearing for an ineffective-assistance-of-counsel claim. A reasonable jurist might find that such a holding provides an insufficient basis for denying Henry a hearing in this Court. A reasonable jurist might also disagree on the impact an expert witness's testimony would have had on the result of the trial because Henry was acquitted of all charges but one. Accordingly, Henry will be granted a certificate of appealability with respect to his first

claim.

The Court denies Henry a certificate of appealability with respect to his sentencing claim. For the reasons stated in this opinion, Henry has failed to make a substantial showing of the denial of a federal constitutional right with respect to that claim. *See Dell v. Straub,* 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002).

## V. ORDER

**WHEREFORE**, the Court **ORDERS** that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **GRANTED** as to Mr. Henry's ineffective-assistance-of-counsel claim, and **DENIED** with respect to his sentencing claim**.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: October 25, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 25, 2010, by electronic and/or ordinary mail.

Alissa Greer
Case Manager